**Affirmed as Reformed and Opinion filed July 11, 2013.**



In The

# Fourteenth Court of Appeals

NO. 14-12-00461-CR
NO. 14-12-00462-CR

**JASON DEWAYNE HAGGERTY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause Nos. 1321005 &1321004**

## O P I N I O N

Appellant Jason DeWayne Haggerty appeals his two convictions for possession of a controlled substance and possession of marijuana. We reform the trial court's judgment and affirm the judgment as reformed.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by two, separate indictments with the offenses of

possession of a controlled substance (cocaine weighing more than four and less than 200 grams) with the intent to distribute and possession of marijuana weighing more than four ounces and less than five pounds. He pleaded "not guilty" to both charges.

Before trial, appellant filed a motion to disclose the identity of the State's confidential informant. The trial court held a hearing on appellant's motion and denied it. Appellant also requested an *in camera* hearing to determine whether the informant could offer testimony necessary to a determination of guilt or innocence; the trial court denied appellant's request.

Appellant also filed a motion to suppress evidence obtained pursuant to a search warrant, asserting that the affidavit in support of the search warrant contained false statements. Appellant moved for an evidentiary hearing relating to these allegedly false statements. The trial court denied the motion to suppress and the request for an evidentiary hearing.

At trial, officers with a special-operations division of a local police department testified that, based on citizens' complaints of narcotics-related activities, they initiated an investigation of a specific residential address in Baytown, beginning in August 2011. During their surveillance of the home, the officers observed vehicular and foot traffic of known narcotics users at the location. The officers often saw appellant or a truck registered to appellant at the residence. They saw him use a key to enter the home on many occasions; they did not see anyone else use a key to enter the home. Officers noticed a pattern: whenever appellant was at the home or his truck was parked outside the home, vehicular and foot traffic followed, individuals would go inside the house, stay for a short period of time, and leave. This activity did not occur when appellant's truck was not parked at the home.

2

On September 21, 2011, officers were conducting surveillance and had observed the usual pattern of traffic at the home and appellant's truck parked outside. That afternoon, an officer received a phone call from a confidential informant, regarding activities inside the home. Two officers met with the informant, who told them he had been inside the house that day and that a person named "Gator" was selling marijuana and cocaine. The officers knew appellant used the name "Gator" and showed the informant a photo of appellant; the informant identified appellant as the person selling the contraband inside the home.

The officers returned and observed individuals leaving the home, including appellant, who was carrying a black backpack. Appellant locked the door and left the premises in his truck. As he drove away, the officers saw him commit a traffic violation and informed a uniformed officer of the traffic offense. A uniformed officer in a marked patrol unit initiated a traffic stop of appellant's vehicle. During the traffic stop, the officer arrested appellant for the traffic violation and conducted an inventory search of the vehicle. The officer recovered from the vehicle a black backpack containing over $2,000 in small bills.

Using the information from the confidential informant, officers obtained a search warrant for the home. Officers executing the search warrant used appellant's key to enter. Inside the home, officers recovered the following items: a large, plastic bag of marijuana from the oven, a plastic cup containing crack cocaine from a kitchen cabinet, a salt container in the trash containing plastic bags of crack and powder cocaine, and large plastic bags containing marijuana from a bedroom closet. In total, the officers recovered thirty-eight grams of cocaine and two pounds of marijuana. Officers also recovered four digital scales, tools for cooking crack cocaine, and two substances that commonly serve as adulterants for cocaine.

At trial, the jury found appellant guilty of the lesser offense of possession of a controlled substance, cocaine, for which he was sentenced to eighty years' confinement. The jury also found appellant guilty of the offense of possession of marijuana, for which he was sentenced to one year of confinement.

ISSUES AND ANALYSIS

**Is the evidence sufficient to support the convictions?**

In appellant's first and second issues, he challenges the sufficiency of the evidence to support his convictions for possession of a controlled substance and possession of marijuana. He challenges the evidence as being insufficient to show he knowingly exercised care, custody, and control over the contraband seized from the home. He also challenges the sufficiency of the evidence to show that he had exclusive possession of the home.

In evaluating a sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have

4

found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

The Court of Criminal Appeals has determined that the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Therefore, we will review the evidence under the *Jackson v. Virginia* standard as articulated in the preceding paragraph.

A person commits the felony offense of possession of marijuana if that person knowingly or intentionally possesses a useable quantity of it. *See* Tex. Health & Safety Code Ann. § 481.121 (West 2010). A person commits the offense of possession of a controlled substance if that person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1, and the substance was not prescribed by a practitioner. Tex. Health & Safety Code Ann. § 481.115(a), (d) (West 2010). Cocaine is a controlled substance listed in Penalty Group 1. *Id.* § 481.102(3)(D) (West 2010). "Possession" is defined as "actual care, custody, control, or management." Tex. Penal Code Ann. § 1.07(a)(39) (West 2011); Tex. Health & Safety Code Ann. § 481.002(38) (West 2010). To prove unlawful possession of a controlled substance, the State must establish that (1) the accused exercised care, control, or management over the contraband, and (2) knew the substance was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). The elements of possession may be proven through direct or circumstantial evidence, although the evidence must establish that the accused's connection with the substance was more than fortuitous. *Id*. at 405–06.

When the accused is not in exclusive possession of the place where the contraband is found, the State must show additional affirmative links between the

5

accused and the contraband. *See Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Appellant points to evidence that he did not own the home; the house belonged to Murray Crump. But, an analysis as to exclusive possession does not necessarily turn on ownership; rather, the crucial inquiry is who exercised "actual care, custody, control, or management." *See* Tex. Penal Code Ann. § 1.07(a)(39). Appellant asserts that he did not have exclusive possession. Presuming, without deciding, that appellant did not have exclusive possession of the home, an analysis of the affirmative links reflects that the evidence is sufficient to support appellant's convictions.

An affirmative link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it. *See Olivarez*, 171 S.W.3d at 291. Courts have identified the following factors that may help to show an accused's affirmative links to a controlled substance: (1) the accused's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the accused's proximity to and the accessibility of the narcotic; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed other contraband or narcotics when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the accused owned or had the right to possess the place where the narcotics were found; (12) whether the place where the narcotics were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 162 n. 12 (Tex. Crim. App. 2006). Additionally, a large quantity of contraband may be a factor

affirmatively linking appellant to the contraband. *See Olivarez*, 171 S.W.3d at 292. No set formula necessitates a finding of an affirmative link sufficient to support an inference of knowing possession; affirmative links are established by the totality of the circumstances. *See Hyett v. State*, 58 S.W.3d 826, 830 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). The number of factors present is not as important as the logical force the factors create to prove the accused knowingly possessed the controlled substance. *Robertson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

The record reflects that over the course of two or three months, officers observed appellant at the home almost every day. Each time appellant arrived, he used a key to enter, and as he left the home, he used a key to lock the door. Officers did not see any other person use a key to enter the home, and no one entered the home when appellant was not there. Officers could not recall seeing activity at the home when appellant was not inside. When appellant was at the home or his truck was parked outside, officers observed vehicular and foot traffic to the home at all hours of the day and night; individuals would enter the home and stay for a short time before leaving the premises.

Although appellant was not present when the officers executed the search warrant, he was the last person to leave the home before the search, and officers witnessed him use his key to lock the door as he left the premises in his truck. A uniformed officer conducted the traffic stop of appellant's truck, but the officers who were conducting surveillance of the home continued to monitor the home and did not see anyone enter the home in appellant's absence. No one was inside the home when the officers executed the search warrant. The home, as the officers found it during the search, would have been in the same condition as it was when appellant left and locked the door.

7

An electric bill bearing the home's address was found in appellant's backpack. Officers also discovered over $2,000 in small denominations inside appellant's backpack. Appellant gave officers a key to the home to enter and execute a search warrant. A rational inference from these facts (the electric bill in appellant's possession, bearing the address of the home, along with officers' witnessing, over the course of several months, only appellant using a key to enter or exit the home) is that appellant had a right to possession of the home. *See Hargrove v. State*, 211 S.W.3d 379, 386 (Tex. App.—San Antonio 2006, pet. ref'd) (concluding that defendant had right to possession of girlfriend's home, where contraband was found, when affirmative links showed that defendant had a key, often stayed the night at the home, and paid utilities bills for the home). To the extent appellant suggests that the contraband belonged to someone else, we note that control over contraband need not be exclusive, but can be jointly exercised by more than one person. *See Poindexter*, 153 S.W.3d at 412. But, appellant does not point to any evidence of shared possession, and the record, likewise, reflects none.

Officers who executed the search warrant discovered, in plain view, a digital scale with residue from narcotics on it and two substances commonly used as adulterants. *See Herrera v. State*, 561 S.W.2d 175, 179 (Tex. Crim. App. 1978) (considering as affirmative links narcotics in plain view in the kitchen and bedroom as being sufficient to show that the defendant who possessed the marijuana knew it was contraband); *Gregory v. State*, 159 S.W.3d 254, 260 (Tex. App.—Beaumont 2005, pet. ref'd) (considering as affirmative links large quantity of contraband in plain view in a home, which was conveniently accessible to a defendant, paraphernalia were present, and place where contraband was found was enclosed). Though the narcotics were secreted throughout the home, they would

8

have been readily available to appellant in the kitchen when he returned to the home. Given the large amount of money in small bills and the utility bill for the home found in appellant's possession, and the heavy foot and vehicular traffic when appellant was in the home, the affirmative links reflect that appellant exercised custody, care, control or management over the home and the contraband inside. *See Classe v. State*, 840 S.W.2d 10, 12 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (concluding that accused was affirmatively linked to narcotics when officers observed foot traffic at the accused's home consistent with narcotics transactions for ten days prior to a search and that accused possessed $1,966 in cash after the foot traffic to the home).

Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have determined beyond a reasonable doubt that appellant knowingly exercised actual care, custody, control, or management of the home and the contraband recovered from it. *See Hargrove*, 211 S.W.3d at 386 (concluding that a defendant had possession of girlfriend's home or right of control over the home when evidence showed he paid bills there, often spent the night, and had a key to the home); *Classe*, 840 S.W.2d at 12 (concluding that foot traffic consistent with narcotics transactions and that accused possessed large sum of money in small denominations following the heavy foot traffic affirmatively linked accused to contraband). We overrule appellant's first two issues.

**Did the trial court err in failing to order disclosure of the identity of a confidential informant and in failing to conduct an *in camera* hearing on the matter?**

In his third and fourth issues, appellant asserts the trial court erred in denying his motion to disclose the identity of the confidential informant and in failing to conduct an *in camera* hearing as to the identity. We review the trial court's ruling on a motion to disclose the identity of a confidential informant under

an abuse-of-discretion standard. *Ford v. State*, 179 S.W.3d 203, 210 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). The trial court's ruling will not be disturbed unless it falls outside the zone of reasonable disagreement. *Id.*

Generally, the State has a privilege to withhold the identity of any person who provided information relating to, or assisting in, the investigation of a possible crime. Tex. R. Evid. 508(a). *See Ford*, 179 S.W.3d at 210. If it appears from the evidence in the case, or from some other showing by a party, that an informant may be able to give testimony necessary to a fair determination of a material issue on guilt or innocence, and the State invokes the privilege, the judge must give the State an opportunity to show *in camera* facts relevant to determining whether the informant can, in fact, supply that testimony. Tex. R. Evid. 508(c)(2). A party requesting disclosure under Rule of Evidence 508 has the threshold burden to demonstrate that the informant's identity must be disclosed. *Bodin v. State*, 807 S.W.2d 313, 318 (Tex. Crim. App. 1991). Before a court orders the identity of the informant to be revealed, the informant's potential testimony must be shown to significantly aid the defendant; mere conjecture about possible relevance is insufficient to meet the threshold burden. *Id.* Appellant must make a plausible showing of how the informant's information may be important. *See Abdel-Sater v. State*, 852 S.W.2d 671, 674 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). Only after a defendant makes a plausible showing is the trial court required to hold an *in camera* hearing to determine whether disclosure is necessary. *Olivarez*, 171 S.W.3d at 292.

When it is shown that an informant was an eyewitness to an alleged offense, then the informant can give testimony necessary to a fair determination of the issues of guilt or innocence. *Anderson v. State*, 817 S.W.2d 69, 72 (Tex. Crim. App. 1991). But, if the informant's information is used only to establish probable

cause for a search warrant and the informant was neither a participant in the offense for which the accused was charged, nor present when the search warrant was executed, the identity of the informant need not be disclosed because the testimony is not essential to a fair determination of guilt or innocence. *Ford*, 179 S.W.3d at 210.

Appellant claims to have made a plausible showing that the disclosure was necessary to a fair determination of the issue of guilt or innocence. He refers to his motion to disclose the identity and accompanying memorandum, both of which recited the following relevant facts contained in the affidavit supporting the search warrant:

- A confidential informant, on September 21, 2011, identified the address of the home as a place where quantities of cocaine and marijuana were being kept and sold;
- The confidential informant stated that the home was in the care, custody, and control of a black male named "Gator"; and
- The confidential informant had been inside the home in the preceding forty-eight hours, and while inside, observed a quantity of cocaine and marijuana being kept and sold by "Gator."

In his motion, appellant noted that another black male, Mark Beauchamp, had been inside the home during the relevant time frame and that the informant's information was not reliable or credible. Appellant attached to his motion the search-warrant affidavit, police investigative reports, and statements of appellant and others identifying the names of individuals who had been present in the home on September 21, 2011, and stating that none of the other people were confidential informants. Following a hearing, during which appellant challenged the existence of an informant, the trial court denied the motion.

As reflected in the affidavit, the officer knew appellant by name and by sight

from other prior narcotics investigations and knew appellant used the alias "Gator." The record reflects that the informant's information was used to obtain probable cause for a search warrant, not to establish appellant's identity or his connection to the premises, as appellant contends. *See Ford*, 179 S.W.3d at 210. There is no evidence that the confidential informant participated in the offenses for which appellant was charged. *See id.* Nor is there evidence that the informant participated in the execution of the search warrant. *See id.* Appellant's arguments relating to the need to question the informant about other individuals who resembled appellant essentially amounted to nothing more than speculation that the informant would give testimony that was different from what the affiant-officer claimed to have learned from the informant. *See Patterson v. State*, 138 S.W.3d 643, 648–49 (Tex. App.—Dallas 2004, no pet.) (concluding that because warrant was based on confidential informant's description of narcotics inside a home, an argument that the informant could identify others who possessed the narcotics was "mere conjecture" unsupported by evidence); *Washington v. State*, 902 S.W.2d 649, 656–57 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (providing that an argument of mistaken identification was not necessary to a fair determination of guilt or innocence when informant did not witness the charged offense).

Under these circumstances, appellant has not demonstrated that he met the threshold burden of showing that the informant's testimony was necessary to a fair determination of guilt or innocence. *See Ford*, 179 S.W.3d at 210. The trial court did not err in denying appellant's motion. *See id.* Therefore, an *in camera* hearing was not required to determine whether the informant's identity would be admissible. *See Abdel-Sater*, 852 S.W.2d at 674. We overrule appellant's third and fourth issues.

**Did the trial court err in denying appellant's motion to suppress and in failing to conduct a hearing on the motion?**

In appellant's fifth and sixth issues, he asserts the trial court erred in failing to conduct an evidentiary hearing and in denying his related motion to suppress, in which he asserted that the probable-cause affidavit contained false statements. Appellant contends that he made the requisite showing of falsity to warrant an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), and that the trial court should not have denied his related motion to suppress.

In *Franks*, the Supreme Court of the United States concluded that, if a probable-cause affidavit includes a false statement that was made knowingly, intentionally, or with reckless disregard for the truth and that was necessary to establishing probable cause, the warrant is rendered invalid under the Fourth Amendment. *Franks*, 438 U.S. at 155–56, 98 S. Ct. at 2676. This exclusionary rule does not extend to instances in which the police are merely negligent in collecting the facts alleged in the affidavit. *Id.*, 438 U.S. at 170, 98 S. Ct. at 2674. The affidavit must make a truthful showing of probable cause "in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.*, 438 U.S. at 165, 98 S. Ct. at 2674. A misstatement in an affidavit that is the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, will not make the warrant invalid. *See Dancy v. State*, 728 S.W.2d 772, 783 (Tex. Crim. App. 1987).

To be entitled to a *Franks* hearing, a defendant must request one and make a substantial preliminary showing that an affidavit supporting a search warrant contains a false statement that was made knowingly, intentionally, or with reckless disregard for the truth. *See Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007). More specifically, the defendant must do the following:

- Allege deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the portions of the affidavit claimed to be false;

- Make an offer of proof stating the supporting reasons;

- Show that when the portions of the affidavit alleged to be false are excised from the affidavit, the remaining content is insufficient to support issuance of the warrant.

*Id.* An attack on the falsity of the statements must be more than conclusory and supported by more than just a desire to cross-examine the affiant. *Id.* The hearing is required only when a false statement is essential to the probable-cause finding. *See id.*

If, at the hearing, the defendant establishes the allegation of perjury or reckless disregard by a preponderance of the evidence, the affidavit's false material is set aside. *See id.* If the remaining content of the affidavit does not then still establish sufficient probable cause, the search warrant must be voided and the evidence resulting from that search excluded. *See id.*

As reflected in appellant's motion to suppress, his motion for a *Franks* hearing, and his memorandum in support of this motion, appellant asserts that the officer's affidavit in support of the search warrant contained the following allegedly false statements:

- The affiant spoke with a confidential informant on September 21, 2011;

- The informant advised the affiant that the informant had been inside the home within the past forty-eight hours;

- While inside, the informant had observed a quantity of cocaine and marijuana being kept and sold by a black male known as "Gator"; and

- The informant identified "Gator" when shown a booking photo of appellant.

In the memorandum in support of his motions and attached statements, appellant identified the individuals whom he claimed were the only people who had been inside the home in the previous forty-eight hours; each of the individuals identified in appellant's affidavit made written statements denying being the confidential informant. Appellant points to these statements as meeting the threshold showing entitling him to a *Franks* hearing to be given an opportunity to question the affiant about the assertions made in the affidavit.

The record reflects that when appellant first filed his *Franks* motion, the trial court ruled that appellant did not meet the requirements for a *Franks* hearing and denied the motion. But, the trial court also ruled that, upon meeting the burden to establish his entitlement to a *Franks* hearing, appellant would be permitted to question the affiant-officer outside of the jury's presence, and the judge carried the motion to suppress with the trial.

During appellant's cross-examination in the jury's presence, the officer testified that the informant contacted him directly via cell phone in the afternoon on September 21, 2011. The officer stated that he met the informant at a different location, and the informant identified appellant from a photo. The officer also testified that law-enforcement officers paid the confidential informant for the tip. The trial court reviewed *in camera* documentation indicating payment to the confidential informant. Outside of the jury's presence, when appellant re-urged his motion to suppress and the *Franks* motion, the trial judge stated that she was satisfied there was a confidential informant in the case, referring to the proof of payment. The trial court ruled that the denial of the *Franks* motion was correct in light of the proof of payment, and the trial court also ruled that there were no misleading statements or reckless misrepresentations in the record. The trial court denied the related motion to suppress. According to appellant on appeal, this

15

evidence reflecting some payment did not address the allegations he raised in his motion and does not show he failed to satisfy the requirements for a full *Franks* hearing.

In part of his *Franks* argument, appellant asserts that the probable-cause affidavit contains false statements made by the affiant knowingly, intentionally, or with reckless disregard for the truth because no confidential informant ever existed. To the extent appellant makes this argument, he failed to make the substantial preliminary showing necessary to require a *Franks* hearing. *See Hennessy v. State*, 660 S.W.2d 87, 92 (Tex. Crim. App. 1983) (holding that appellant's offer of proof was insufficient to make the substantial preliminary showing necessary to require a *Franks* hearing); *United States v. Williams*, 576 F.3d 1149, 1161–62 (10th Cir. 2009) (holding that defendant's affidavit and other evidence was insufficient to make the substantial preliminary showing necessary to require a *Franks* hearing); *United States v. Reed*, 726 F.2d 339, 341–42 (7th Cir. 1984) (holding that self-serving testimony that attempted to show that informant either did not exist or could not have been in an apartment at the relevant time was insufficient to make the substantial preliminary showing necessary require a *Franks* hearing); *United States v. McDonald*, 723 F.2d 1288, 1293–94 (7th Cir. 1983) (holding that self-serving testimony that attempted to show that informant did not exist was insufficient to make the substantial preliminary showing necessary to require a *Franks* hearing).

Appellant also argues that, even if a confidential informant existed, that informant was not inside the home during the forty-eight hours before September 21, 2011, and therefore could not have observed any cocaine or marijuana. But, this argument attacks the veracity of the confidential informant rather than the veracity of the affiant. The *Franks* test deals with the veracity of the affiant, not

that of the informant upon whose information the affiant relied. *See Hennessy*, 660 S.W.2d at 92; *Melton v. State*, 750 S.W.2d 281, 284–85 (Tex. App.—Houston [14th Dist.] 1988, no pet.). An offer of proof that attacks the credibility of an informant, but not the credibility of the affiant, does not entitle appellant to a *Franks* hearing. *See Hennessy*, 660 S.W.2d at 92; *Melton*, 750 S.W.2d at 284–85. Therefore, even under appellant's argument that the informant was not inside the home during the forty-eight hours before September 21, 2011, appellant did not make the substantial preliminary showing necessary to require a *Franks* hearing. *See Hennessy*, 660 S.W.2d at 92; *Davila v. State*, 871 S.W.2d 806, 813 (Tex. App.—Corpus Christi 1994, pet. ref'd); *Williams*, 576 F.3d at 1161–62; *McDonald*, 723 F.2d at 1293–94.

Because appellant did not make the requisite showing, he was not entitled to a *Franks* hearing. *See Harris*, 227 S.W.3d at 85; *Hennessy*, 660 S.W.2d at 92. Likewise, the trial court did not abuse its discretion in overruling appellant's related motion to suppress. *See Harris*, 227 S.W.3d at 85; *Hennessy*, 660 S.W.2d at 92. Accordingly, we overrule appellant's fifth and sixth issues.

**Should the trial court's judgment be reformed to show the correct conviction?**

Appellant, in his seventh issue, requests this court to reform one of the judgments to reflect a conviction for a lesser offense, possession of a controlled substance. Although appellant was indicted for possession with intent to distribute a controlled substance, the jury charge inquired about the lesser offense of possession of a controlled substance, and the jury convicted appellant of that offense. Appellant contends that one of the judgments incorrectly reflects a conviction for possession of a controlled substance with intent to deliver and that the judgment should be reformed to reflect the correct conviction. The State agrees.

17

We, too, find merit in appellant's argument for reformation and sustain appellant's seventh issue. *See French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Accordingly, we reform the trial court's judgment to reflect the jury's verdict that appellant was convicted of possession of a controlled substance in cause number 1321004.

**Did the trial court err in failing to instruct the jury on the State's burden of proof in the punishment charge?**

In his eighth issue, appellant asserts that he suffered egregious harm because the trial court's punishment charge did not instruct the jury that the State's burden with regard to evidence of appellant's prior criminal record was proof beyond a reasonable doubt.

If error is found in the jury charge, the court determines whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the error was preserved. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). When, as in this case, no proper objection was made, the error requires reversal only if it is so egregious and created such harm that the accused did not have a fair and impartial trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

Article 37.07, section 3(a) of the Texas Code of Criminal Procedure provides that, after a finding of guilt, evidence may be offered by either party as to any matter the court deems relevant to sentencing, including but not limited to the following: (1) the prior criminal record of the defendant; (2) the general reputation of the defendant; (3) the character of the defendant; (4) an opinion regarding the reputation of the defendant; (5) the circumstances of the offense on trial; and (6) extraneous circumstances and bad acts that are shown beyond a reasonable doubt

18

to have been committed by the defendant or for which he could be held criminally responsible. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1); *Bluitt v. State*, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004). A reasonable-doubt instruction is not required in the jury charge at punishment when the evidence of a defendant's criminal behavior is in the form of prior offenses that have been subjected to judicial testing under the proper burden, i.e. proof beyond a reasonable doubt, and that burden has been met. *Bluitt*, 137 S.W.3d at 54. Likewise, when an offense has resulted in a final conviction, probation, or deferred adjudication, the burden of proof has been met and no further proof of guilt is necessary. *Id.*

The indictment contained two enhancement paragraphs. Appellant pleaded "true" to the allegations in both paragraphs. The State also offered evidence via five "pen-packets" to show additional criminal convictions for appellant. An officer testified that each contained a fingerprint that matched appellant's fingerprints. According to appellant, the jury charge should have reflected an instruction that the State was required to prove the additional criminal convictions beyond a reasonable doubt.

In any final conviction, the evidence has been subjected to judicial testing of guilt with a beyond-a-reasonable-doubt standard of proof, and the burden of proof has been met. *See id.* The trial court did not err in failing to instruct the jury that the State's burden with regard to evidence of appellant's prior criminal record was proof beyond a reasonable doubt because all of the evidence as to appellant's criminal behavior was in the form of prior convictions, which had been subjected to judicial testing under the proper burden of proof, and that burden had been satisfied. *See id.* Such an instruction would have been useless because no evidence of unadjudicated offenses was introduced. *See id.* We overrule appellant's eighth issue.

19

As reformed, the trial court's judgment is affirmed.


/s/    Kem Thompson Frost
Justice


Panel consists of Justices Frost, Brown, and Busby.

Publish — TEX. R. APP. P. 47.2(b).