# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00456-CR

**Patrick Edward Davis, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT NO. 40237, HONORABLE DANIEL H. MILLS, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

After receiving a tip from a confidential informant that Patrick Edward Davis possessed illegal drugs, the police initiated a traffic stop after observing him. Within a few minutes, a police dog indicated that there were illegal drugs in the car, and the officers searched the car and found methamphetamine within the interior of the car. Consequently, Davis was indicted for possession of between 1 and 4 grams of methamphetamine with intent to deliver. *See* Tex. Health & Safety Code § 481.112(c) (explaining that offense is second-degree felony). Prior to trial, Davis filed a motion to suppress contending that the evidence obtained by the police should be suppressed because the traffic detention was not supported by reasonable suspicion. He also filed a motion seeking to disclose the identity of the confidential informant. In response to the motions, the district court convened two hearings, and after considering the arguments made by the parties, it denied both of Davis's motions. After a trial, the jury found Davis guilty of the alleged crime and

sentenced him to 18 years' imprisonment. *See* Tex. Penal Code § 12.33 (providing that punishment range for second-degree felony is between 2 and 20 years). Davis appeals his judgment of conviction. We will affirm his conviction.

## DISCUSSION

On appeal, Davis presents two issues. First, he contends that the district court erred by denying his motion to suppress. Second, he urges that the district court erred by denying his request to disclose the identity of the confidential informant relied on by the State.

### Motion to Suppress

As mentioned above, in his first issue, Davis argues that the district court erred when it denied his motion to suppress because the police officers did not have reasonable suspicion to initiate the stop. Specifically, Davis contends that the traffic stop was impermissibly and solely based on the hunch of a confidential informant and that there were no corroborating facts to support the informant's tip.

A trial court's ruling on a motion to suppress is reviewed under an abuse-of-discretion standard. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *see also Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009) (specifying that trial court abuses its discretion when its decision lies outside zone of reasonable disagreement); *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005) (noting that trial court abuses its discretion when its ruling is unreasonable or arbitrary). In a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725

2

(Tex. Crim. App. 2007). When reviewing a ruling on a motion to suppress, appellate courts apply a bifurcated standard of review. *Wilson v. State*, 311 S.W.3d 452, 457-58 (Tex. Crim. App. 2010). Under that standard, appellate courts defer to the trial court's determinations regarding historical facts "if supported by the record," *Wade v. State*, 422 S.W.3d 661, 666 (Tex. Crim. App. 2013), but review de novo the trial court's application of the law to those facts, *Wilson*, 311 S.W.3d at 458. Similarly, appellate courts give almost total deference to rulings on mixed questions of law and fact when the resolution depends on an evaluation of credibility and demeanor but review de novo mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor. *State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011). Moreover, purely legal questions are reviewed de novo. *Id.*

In analyzing the district court's ruling, we must bear in mind that Davis is only challenging whether the police had reasonable suspicion to initiate the stop and detain him. *See Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014). A police officer may detain an individual for the purpose of determining whether the individual is involved in criminal activity. *See id.* But, before the officer may initiate a traffic stop, he must have reasonable suspicion that a crime is about to be committed or has been committed. *Id.* In order for reasonable suspicion to exist, an actual violation does not need to have occurred; rather, it is only necessary that "the officer reasonably believed that a violation was in progress." *Green v. State*, 93 S.W.3d 541, 545 (Tex. App.—Texarkana 2002, pet. ref'd); *see Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (noting that officer may briefly detain person for investigative purposes on less than probable cause where specific and articulable facts along with inferences from those facts reasonably

3

warrant detention). "[I]n assessing whether the intrusion was reasonable, an objective standard is utilized: would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate." *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997). Moreover, the assessment is made in light of the totality of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). In addition, the analysis considers the cumulative information that was known to the cooperating officers, and it is not necessary that the detaining officer have knowledge of every fact supporting reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011); *Taylor v. State*, 410 S.W.3d 520, 528 (Tex. App.—Amarillo 2013, no pet.) (citing *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987)); *see Illinois v. Andreas*, 463 U.S. 765, 771 n.5 (1983) (explaining that if law enforcement officials are cooperating in investigation, "the knowledge of one is presumed shared by all"). Provided that the traffic stop is based on reasonable suspicion, then the detention "does not violate Texas law." *Guerra*, 432 S.W.3d at 911.

Furthermore, "[a] confidential informant can provide the requisite reasonable suspicion to justify an investigative detention so long as additional facts are present to demonstrate the informant's reliability." *Smith v. State*, 58 S.W.3d 784, 790 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). "In situations involving the police's use of an informant, we consider the informant's reliability in analyzing the totality of the circumstances." *Id.* at 789. Although an unverified tip might not provide enough support to justify an arrest or the issuance of a warrant, it will be sufficient to justify an investigative stop if it is made by a known informant who has provided information in the past. *Adams v. Williams*, 407 U.S. 143, 146-47 (1972) (explaining that information obtained from informant who has been used before is stronger than anonymous tip).

4

During the suppression hearing, two police officers testified regarding the events leading up to Davis's arrest. First, Officer Denton Willis explained that during the relevant time, he was employed as a narcotics investigator. Next, he revealed that on the day in question he was told by Officer William Fritsch about a tip that "he had received . . . from a credible and reliable informant that Mr. Davis was in the Marble Falls area driving a white with a blue top Ford Lincoln Continental and while in possession of methamphetamine." Further, Officer Willis related that Officer Fritsch stated that he had used the "informant in the past and on each and every occasion that the information provided by that CI was found to be true." Moreover, Officer Willis described how he gave the canine officer, Officer Jeff White, a description of the vehicle and that Officer White initiated a traffic stop.

Second, Officer White testified regarding his recollection of the events in question. In his testimony, Officer White stated that prior to initiating the traffic stop, he had been informed that Davis might be involved in drug trafficking and had been involved at a disturbance at a gas station.[1] Further, he explained that he was told that Davis was driving an older Lincoln car with damage to the driver's side mirror.[2] In addition, he testified that after he saw Davis drive by in a car

_____

[1] In his testimony, Officer White clarified that the main reason that he pulled Davis over was due to the possibility that Davis was involved in narcotics trafficking and that the information about the gas station "was a bonus." He also revealed that he did not know any details about the gas-station incident other than that Davis was involved, but he also admitted that he "just barely heard that" over the radio.

[2] When describing these events, Officer White initially stated that part of the reason that he pulled Davis over was because of the defective mirror, but he later explained that driving with a defective mirror is not always a traffic offense. *See* Tex. Transp. Code § 547.602 (requiring vehicle be equipped with "a mirror located to reflect to the operator a view of the highway . . . from the rear of the vehicle").

with damage to the driver's side mirror, he initiated the traffic stop. *Cf. Carmouche*, 10 S.W.3d at 329 (explaining that informant's information was corroborated by fact that defendant arrived at time and in manner suggested by informant). Moreover, he stated that shortly after pulling Davis over, his dog indicated that there were narcotics in the car, which ultimately led to a search of the vehicle.[3]

In light of the testimony presented during the suppression hearing, including the testimony discussing the collective knowledge of the investigating officers involved, describing the reliability of the confidential informant, and specifying the crime that Davis was allegedly committing, we cannot conclude that the district court abused its discretion by denying Davis's

---

[3] As support for his argument that the motion to suppress should have been granted, Davis primarily relies on *Smith v. State*, 58 S.W.3d 784 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd), and *Davis v. State*, 989 S.W.2d 859 (Tex. App.—Austin 1999, pet. ref'd). We find Davis's reliance on these cases misplaced. In *Smith*, our sister court determined that the police did not have reasonable suspicion to stop Smith when an informant who the police had used before provided a description of Smith's car and stated that Smith would soon be driving with heroin in his car as well as two passengers. 58 S.W.3d at 787, 793-94. In reaching its decision, the court explained that providing a description of a suspect and his location, without more, "does not show that the tipster has knowledge of concealed activity." *Id.* at 792. Importantly, the reviewing court noted that no information was presented establishing the reliability of the informant. *Id.* at 790, 793. In the present case, although there was no testimony establishing the basis for the informant's information, there was testimony establishing that the informant had been used before and establishing the informant's reliability. *See id.* at 788-89 (explaining that determinations regarding whether reasonable suspicion is present depend on totality of circumstances and that weaknesses in some areas may be compensated for by other factors). Even assuming that the analysis from *Smith* would compel a different result than the one that we reach, we are not bound by the result reached in that case.

Although we are bound by the reasoning in *Davis*, we do not believe that it compels the result suggested by Davis. In *Davis*, we determined that the anonymous tip received by a 911 dispatcher from "an unidentified female caller of unknown veracity" regarding a vehicle that "was being driven recklessly" and that contained three white men who were "possibly smoking marijuana," without more, "did not exhibit sufficient indicia of reliability to justify the investigative stop of the vehicle." 989 S.W.2d at 861, 864, 865. However, unlike the prior case, here there was evidence regarding the veracity of the informant as well as more definitive information identifying Davis and the crime alleged.

6

motion to suppress. *See Smith*, 58 S.W.3d at 790 (explaining that testimony regarding confidential

informant's "track record" for "providing credible information in the past" can provide additional

facts needed to establish reasonable suspicion through confidential informant's tip); *see also*

*Adams*, 407 U.S. at 144-47 (determining that sufficient indicia of reliability were present when

officer knew informant, when informant had previously given officer information, and when

informant could be arrested for making false complaint if tip was false). Accordingly, we overrule

Davis's first issue on appeal.[4]

**Confidential Informant**

In his second issue on appeal, Davis contends that the trial court erred by denying

his request to disclose the identity of the confidential informant.

---

[4] In a footnote in his brief, Davis mentions that when he cross-examined one of the officers regarding whether the confidential informant "was working off her own drug case" by providing information, the district court sustained a relevance objection raised by the State. Then, Davis argues that the ruling was improper and deprived him "of due process and effective representation by counsel" because the credibility of the informant bears upon the propriety of the investigative stop. *See Prihoda v. State*, 352 S.W.3d 796, 801 (Tex. App.—San Antonio 2011, pet. ref'd) (explaining that points of error are multifarious when they are based on more than one legal theory and raise more than one complaint and that appellate courts may refuse to address multifarious points because they present nothing for review). However, other than the general argument mentioned above and references to various constitutional provisions and to two Supreme Court cases without explanation regarding how those authorities relate to his claims, Davis does not further elaborate on this alleged error. *See* Tex. R. App. P. 38.1 (requiring briefs to contain citations to authority supporting claim). Nor does he request any relief regarding this alleged error. In any event, we review a trial court's ruling on the admission of evidence under an abuse-of-discretion standard, *Hawkins v. State*, 89 S.W.3d 674, 678 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd), and we do not believe that the record in this case would support a conclusion that the district court abused its discretion by sustaining the State's objection.

Under Rule of Evidence 508, the State has a "privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of a law to a law enforcement officer." Tex. R. Evid. 508(a). That privilege is subject to several exceptions. One exception applies when "information from an informer is relied upon to establish the legality of the means by which evidence was obtained" and when "the court is not satisfied that the information was received from an informer reasonably believed to be reliable or credible." *Id.* R. 508(c)(3). Another exception applies to situations in which the evidence shows that "an informer may be able to give testimony necessary to a fair determination of . . . guilt or innocence in a criminal case." *Id.* R. 508(c)(2). "If it appears from the evidence" that an informant may be able to give testimony necessary to guilt or innocence and if the State invokes the privilege, the trial court must give the State an opportunity to show during an in camera proceeding facts bearing upon a determination of whether the informant can provide that testimony. *Id.*

The "defendant has the threshold burden to show that the informant's identity must be disclosed." *Sanchez v. State*, 98 S.W.3d 349, 355 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). To satisfy this burden, "the defendant must present evidence, from any source, but cannot rely on mere speculation or conjecture." *Id.* "Because the defendant may not actually know the nature of the informant's testimony, the defendant need make only a plausible showing of how the informant's testimony may be important, *i.e.*, how that testimony could be necessary to a fair determination of guilt or innocence." *Id.* at 355-56; *see* Tex. R. Evid. 508(c)(2). "Before a court orders the identity of the informant to be revealed, the informant's potential testimony must be shown to significantly aid the defendant; mere conjecture about possible relevance is insufficient to meet the threshold

burden." *Haggerty v. State*, 429 S.W.3d 1, 8 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *see Sanchez*, 98 S.W.3d at 356. Only "after a defendant makes a plausible showing is the trial court required to hold an *in camera* hearing to determine whether disclosure is necessary." *Haggerty*, 429 S.W.3d at 8. If "it is shown that an informant was an eyewitness to an alleged offense, then the informant can give testimony necessary to a fair determination of the issues of guilt or innocence." *Id.* However, if the information provided by the informant was only used to establish reasonable suspicion or probable cause and if the informant was not a participant in the offense or present when the defendant was arrested, "the identity of the informant need not be disclosed because the testimony is not essential to a fair determination of guilt or innocence." *See id.*

In his motion, Davis alleged that the informant's identity must be disclosed "because the informer participated in the alleged offense"; "because the informer was present at the time of the defendant's arrest"; "because the informer is a material witness as to whether or not the defendant knowingly committed a crime"; "because the informer's information was used to provide a basis for the stop and subsequent search of defendant's vehicle, the legality of that stop and subsequent search are at issue in the case"; and because the "informer's testimony" is necessary to a fair determination of guilt or innocence. However, other than speculating that the informer's testimony was necessary for the reasons given above, Davis provided no evidence and made no showing that would support those assertions. In his motion, Davis also asserted that the informant's name must be disclosed because the informer's information was relied upon to "establish the legality of the means by which evidence was obtained." However, the exception relied upon by Davis only requires disclosure if the trial court "is not satisfied that the information was received

9

from an informer reasonably believed to be reliable or credible." *See* Tex. R. Evid. 508(c)(3). As summarized in the first issue, testimony was presented establishing the reliability of the informant, and the district court's ruling after considering this testimony establishes that it was satisfied that the informant had sufficient reliability.

During the hearing, Davis also requested to have the name of the informant revealed. Further, Davis discussed that it was his belief that the informant was present in a parking lot with Davis when the police began surveilling him and was "a block away from the stop and search as well." In addition, Davis argued that he was concerned that the informant may have had access to his car. Accordingly, Davis requested that the identity of the informant be revealed and that he be given an opportunity to review the informant's conduct in other cases. Other than this unsupported speculation, Davis made no other showing or argument concerning why the informant's identity should be disclosed. After considering the parties' arguments, the district court commented that it had not "heard that the informant was present or participating in the actual vehicle stop" and denied the motion to disclose.

In light of Davis's burden and given the nature of the statements made in the motion and during the hearing, we cannot conclude that the district court abused its discretion by denying Davis's motion to disclose the identity of the informant. Accordingly, we overrule his second issue on appeal.[5]

---

[5] In an effort to further attack the district court's ruling and to lessen the amount of harm needed to warrant a reversal, Davis attempts to re-frame this issue as a denial of his constitutional rights to due process and to effective assistance of counsel. *See* Tex. R. App. P. 44.2(a), (b) (distinguishing between constitutional errors and other errors and requiring reversal for constitutional errors unless court determines beyond reasonable doubt that it did not contribute to conviction or

10

**CONCLUSION**

Having overruled Davis's issues on appeal, we affirm the district court's judgment of conviction.

---

punishment). When making this claim, Davis mentions the district court's ruling on his motion to disclose, the district court's denial of his request for a continuance after the ruling, and the district court's purported quashing of his subpoena duces tecum asking the sheriff to produce records regarding the confidential informant's participation in other cases.

However, the record does not reveal that he presented any due-process challenge to the district court. *See id.* R. 33.1 (setting out manner in which issue is preserved for appeal, including need for moving party to present complaint to trial court "by a timely request, objection, or motion"); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (stating that "even constitutional errors may be waived"). When arguing that he was denied effective assistance of counsel, Davis does not challenge the effectiveness of his attorney's performance; on the contrary, in his brief, Davis repeatedly praises the representation that he received during trial. Instead, Davis contends that the district court's rulings prevented his advocate from being even more effective by hampering his attorney's ability to present a defense. Although Davis presents an interesting and inventive twist on effectiveness claims, we believe that effectiveness challenges are properly aimed at the performance of an attorney and not the trial court. *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (explaining that to succeed on ineffectiveness claim, defendant must show that his attorney's "representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

Moreover, as detailed above, we do not believe that the district court abused its discretion by denying his motion to disclose the identity of the informant. To the extent that the district court's ruling regarding Davis's subpoena request is before us, we are convinced that our reasoning related to his motion to disclose would also support the district court's decision to quash the subpoena request. *See* Tex. R. Evid. 508. Furthermore, we note that prior to ruling on Davis's motion for continuance, the district court verified that Davis believed that he knew the identity of the confidential informant and questioned Davis regarding his efforts to locate her before the hearing. *See Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002) (explaining that appellate courts review rulings on motions for continuance under abuse-of-discretion standard).

11

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   October 8, 2014

Do Not Publish